**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

---

IAN HEILMANN,

Plaintiff,

v. Case Number: 2:26-cv-1851

SHARI L. BLACK, Individually and
in her official capacity as
Chief Executive Officer of
Wisconsin State Fair Park, and

CHRISTIAN J. KOWIESKI, Individually,

Defendants.

---

# COMPLAINT

---

NOW COMES Plaintiff, Ian Heilmann, by his attorneys, Alan C. Olson & Associates, S.C., as and for a Complaint against Defendants, Shari L. Black and Christian Kowieski, alleges as follows:

## PARTIES

1. Plaintiff, Ian Heilmann ("Heilmann"), is an adult citizen of the United States, residing at W192S7238 Hillside Drive, Muskego, WI 53150.

2. Defendant, Shari L. Black ("Black"), is an adult residing at W289S4685 Rockwood Trl, Waukesha, WI 53189, who, at all times relevant, was the Chief Executive Officer of Wisconsin State Fair Park ("State Fair Park"). Black is sued in her individual capacity and in her official capacity as Chief Executive Officer of State Fair Park.

3. Defendant, Christian J. Kowieski ("Kowieski"), is an adult residing at 1339 Goldfinch Way, Oconomowoc, WI 53066, who, at all times relevant, was the Chief Operating Officer of State Fair Park. Kowieski is sued in his individual capacity.

4. State Fair Park is an agency of the State of Wisconsin, governed by the State Fair Park Board pursuant to Chapter 42 of the Wisconsin Statutes, with its principal offices located at 640 S. 84th Street, West Allis, Wisconsin 53214.

5. At all times relevant, Black and Kowieski acted under color of state law and within the scope of their employment with State Fair Park.

**JURISDICTION AND VENUE**

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4). This is a retaliation suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), as enforced against state actors through 42 U.S.C. § 1983 ("Section 1983").

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), as Defendants reside in the Eastern District of Wisconsin, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Wisconsin.

**OPERATIVE FACTS**

8. During 2010, Heilmann commenced employment with State Fair Park.

9. State Fair Park ultimately promoted Heilmann to the position of Director of Events Services.

10. Heilmann's employment with State Fair Park was a contractual relationship within the meaning of Section 1981.

11. As Director of Events Services, Heilmann's duties included communicating with promoters and entertainers who sought to hold events at State Fair Park.

12. State Fair Park routinely scheduled more than one event on the same dates.

13. During January 2025, Heilmann and representatives of Nappy Boy Entertainment ("NBE"), acting as agent for the recording artist T-Pain, discussed NBE's proposal to hold an entertainment event featuring T-Pain at State Fair Park during June 2025 (the "T-Pain Event").

14. T-Pain is African American.

15. Heilmann notified Black of NBE's proposed T-Pain Event.

16. During early 2025, Heilmann met with Black and Kowieski for the purpose of having them approve or deny moving forward with the T-Pain Event.

17. Black approved moving forward with the T-Pain Event.

18. On February 4, 2025, Kowieski met with Heilmann and Black to discuss the T-Pain Event.

19. After Black approved the T-Pain Event, Heilmann worked with NBE to plan the T-Pain Event, including NBE's plans for carnival rides and karaoke.

20. The T-Pain Event was placed on State Fair Park's electronic booking calendar, which was accessible to all State Fair Park management, including Black and Kowieski.

21. From January through May 2025, the T-Pain Event, including NBE's plans for carnival rides, appeared on the agendas for and was discussed at Heilmann's weekly meetings with Kowieski, weekly operations meetings with Kowieski and the State Fair Park police, and weekly meetings of State Fair Park's executive team.

22. On March 13, 2025, NBE began publicly promoting and advertising the T-Pain Event and selling tickets.

23. On March 14, 2025, Heilmann met with Black and Ken Pileggi ("Pileggi"), State Fair Park's Chief of Police.

24. During the March 14, 2025 meeting, Black and Pileggi told Heilmann that State Fair Park's concern was that the T-Pain Event could attract gangs, and that State Fair Park did not have the resources to protect the public.

25. During the March 14, 2025 meeting, Heilmann opposed Black's and Pileggi's position, telling them that he disagreed that the T-Pain Event was more likely to attract gangs than any other event.

26. Black and Pileggi instructed Heilmann to communicate to NBE their concern that the T-Pain Event could attract gangs and that State Fair Park did not have the resources to protect the public.

27. As instructed, Heilmann notified NBE representative Charlie Essin ("Essin") that State Fair Park's Chief Executive Officer and Chief of Police were concerned that the T-Pain Event could attract gangs and that State Fair Park did not have the resources to protect the public.

28. Essin responded that gangs were not a legitimate threat because admission to the T-Pain Event would cost $50 per person, offered to provide NBE's own security team for the T-Pain Event, and asked to speak with Black and Pileggi directly.

29. Heilmann relayed Essin's response to Black and Pileggi, including Essin's request to speak with Black and Pileggi directly.

30. Black and Pileggi told Heilmann that NBE could not provide supplemental security, and that the T-Pain Event could not go forward if it included carnival rides or karaoke.

31. Black told Heilmann that she was not going to speak with NBE and that Heilmann "should just do [his] job."

32. During the same weekend that the T-Pain Event was to take place, State Fair Park was hosting Greek Fest, which included a midway of carnival rides and games.

33. Black and Pileggi did not express any concern that Greek Fest, or its carnival rides, would attract gangs.

34. State Fair Park permitted Greek Fest to proceed with a full midway of carnival rides during the same weekend that Black and Pileggi refused to allow carnival rides at the T-Pain Event.

35. Defendants refused to permit the T-Pain Event to proceed, as previously approved, because of the race of T-Pain and his anticipated audience.

36. Defendants' conduct interfered with the right of NBE and T-Pain to make and enforce contracts with State Fair Park on the same basis as is enjoyed by white citizens.

37. Beginning March 20, 2025, Heilmann, as directed, made repeated written demands on NBE to cease selling tickets for the T-Pain Event, ultimately copying Black on those communications.

38. On March 23, 2025, Nicolette Carothers ("Carothers"), on behalf of NBE and T-Pain, told Heilmann that she believed the exclusion of the T-Pain Event was racially motivated, as the T-Pain Event was not likely to "attract gangs."

39. Carothers further told Heilmann that T-Pain was going to share what happened with his fans.

40. Heilmann immediately reported to Kowieski and Black that Carothers had complained that the exclusion of the T-Pain Event was racially motivated, and that T-Pain was going to share what happened with his fans.


Case 2:26-cv-01851-NJ Filed 10/06/26 Page 5 of 10 Document 3

41. Heilmann participated in ongoing communications between State Fair Park and NBE regarding NBE's complaint that State Fair Park was discriminating against NBE and T-Pain because of race.

42. Heilmann reasonably and in good faith believed that Defendants were discriminating against NBE and T-Pain because of race.

43. Upon information and belief, Heilmann's former supervisor, Andrea Rowe, complained to State Fair Park's head of Human Resources regarding racially charged comments made by Black and Kowieski.

44. On May 2, 2025, T-Pain disclosed publicly that State Fair Park was motivated by race to exclude the T-Pain Event, based on State Fair Park's claim that, "we cannot do carnival rides because the carnival rides are closely tied to gangs. He said we can't have carnival rides because if we have rides there, gangs are going to come."

45. On May 2, 2025, at 4:53 p.m., Black represented to NBE, "I understand that your team had requested an opportunity to meet with me, unfortunately I was never made aware of this request. I would have happily accepted the meeting. I apologize that this request never made it to me as I believe the outcome could have been different."

46. Black's representation to NBE was false, as Heilmann had informed Black that Essin asked to speak with her directly, and Black had refused.

47. On May 2, 2025, after State Fair Park's Communications Director asked T-Pain to approve a joint press release, T-Pain publicly responded, "[y]ou don't get to control the narrative when you just told me I'm going to bring gangs," and asked, "how come there's no gangs showing up to these things that you're promoting? Oh is it because you're doing it and not black T-Pain? Is that what it is?"

48. On May 2, 2025, Black told Heilmann and State Fair Park's executive team that they should not reveal to NBE or T-Pain that State Fair Park was allowing a full midway of carnival rides at Greek Fest.

49. State Fair Park issued a press release stating in pertinent part, "[t]here were multiple missteps in internal communications that are not representative of the standard at Wisconsin State Fair Park."

50. Kowieski documented that "allegations of racism have severely harmed WSFP's brand and could lead to long-term financial and reputational consequences," and noted that T-Pain had millions of followers across his social media accounts.

51. On May 5, 2025, three days after T-Pain publicly accused State Fair Park of race discrimination, Defendants terminated Heilmann's employment.

52. Upon information and belief, Black and Kowieski made, participated in, and caused the decision to terminate Heilmann's employment.

53. Following Heilmann's termination, Defendants advanced a false narrative that it was Heilmann, not Defendants, who had concluded that the T-Pain Event would attract gangs.

54. Kowieski stated that "the promoters misunderstood Ian's explanation, believing that rides were disallowed due to concerns about attracting gangs."

55. Defendants' narrative was false, as the concern that the T-Pain Event would attract gangs originated with Black and Pileggi, and Heilmann opposed it.

56. Defendants have asserted that Heilmann was terminated because of a "lack of transparency" and because he did not properly communicate Black's directives to NBE.

57. Defendants' asserted reasons are false and a pretext for retaliation, as Heilmann communicated Black's directives to NBE as instructed, Black was copied on Heilmann's written

demands to NBE, and on May 6, 2025, Black acknowledged that Heilmann had notified NBE of State Fair Park's safety concerns.

58. Defendants terminated Heilmann's employment because he opposed and reported Defendants' race discrimination against NBE and T-Pain, and to shift responsibility for that discrimination away from Defendants and onto Heilmann.

59. As a result of Defendants' conduct, Heilmann has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and injury to his professional reputation.

**FIRST COUNT**
**Retaliation in Violation of 42 U.S.C. § 1981, Enforced Through 42 U.S.C. § 1983, Against Black and Kowieski in Their Individual Capacities**

60. As and for a first Count, Plaintiff re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

61. Section 1981 guarantees all persons within the jurisdiction of the United States the same right to make and enforce contracts as is enjoyed by white citizens, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

62. Section 1981 prohibits retaliation against a person who opposes or reports race discrimination prohibited by Section 1981, including race discrimination directed at third parties.

63. Heilmann engaged in activity protected by Section 1981 when he opposed Black's and Pileggi's race-based position that the T-Pain Event would attract gangs, when he reported Carothers' complaint of race discrimination to Black and Kowieski, and when he participated in communications regarding NBE's complaint of race discrimination.

64. Black and Kowieski, acting under color of state law, retaliated against Heilmann by terminating his employment because of his activity protected by Section 1981.

65. Black and Kowieski acted intentionally, with malice, and with reckless indifference to Heilmann's federally protected rights.

66. Pursuant to Section 1983, Heilmann may recover compensatory and punitive damages from Black and Kowieski for their retaliation against Heilmann in violation of Section 1981.

**SECOND COUNT**
**Prospective Relief for Violation of 42 U.S.C. § 1981, Enforced Through 42 U.S.C. § 1983, Against Black in Her Official Capacity**

67. As and for a second Count, Plaintiff re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

68. Heilmann's retaliatory termination constitutes an ongoing violation of Section 1981.

69. Upon information and belief, Black, as Chief Executive Officer of State Fair Park, has the authority to reinstate Heilmann to his position as Director of Events Services.

70. Heilmann is entitled to prospective injunctive relief against Black in her official capacity, including reinstatement to his former position with all associated seniority and benefits.

WHEREFORE, Plaintiff, Ian Heilmann, demands relief as follows:

A. Judgment against Defendants, Black and Kowieski, in their individual capacities, awarding Plaintiff compensatory damages, including damages for lost wages and benefits, emotional distress, humiliation, and injury to reputation;

B. Judgment against Defendants, Black and Kowieski, in their individual capacities, awarding Plaintiff punitive damages;

C. An order directing Defendant, Black, in her official capacity as Chief Executive Officer of Wisconsin State Fair Park, to reinstate Plaintiff to his former position, with all associated seniority and benefits;

D. Judgment against Defendants awarding Plaintiff his costs, disbursements, prejudgment interest, actual attorney's fees, and expert witness fees pursuant to 42 U.S.C. § 1988 incurred in prosecuting these claims;

E. Such other relief as the Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 5th day of October, 2026.

*Electronically signed by Alan C. Olson*
Alan C. Olson, SBN 1008953
Alan C. Olson & Associates, S.C.
Attorneys for Plaintiff
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email:AOlson@Employee-Advocates.com